The executrices of the estate of Frank J. Dupignac appeal from so much of the transfer tax assessed in respect of his estate as is based upon certain gifts made by him prior to his death. The sole question involved in the appeal is, as to whether the comptroller erred in determining that these gifts were made in contemplation of death. It is not contended by the state that the gifts were intended to take effect in possession or enjoyment after death; it is conceded that they were perfected gifts — completed transfers.
The gifts in question were made to testator's two daughters (the executrices and appellants), $75,000 cash ($37,500 to each), in December, 1920; and in March, 1921, his city (winter) residence and his country (summer) residence, with their contents, to the two as tenants in common. The total value of this March, 1921, gift was $127,000. He died May 10th, 1922, leaving net assets of some $550,000 (exclusive of the gifts).
Concededly, the transfers in question were gifts, without any valuable consideration. Under the statute in force at the time of his death (P.L. 1909 ch. 228 § 1, and subsection third, as amended by P.L. 1922 ch. 174), these gifts, therefore, being made within two years prior to his death, are to be deemed to have been made in contemplation of death (and therefore taxable), in the absence of proof to the contrary.
(There is a further condition precedent specified in this statute, namely, that the gifts be of "a material portion of his estate, or in the nature of a final disposition or distribution thereof." This, however, need not here be considered, since the gifts obviously were of a material portion of the estate — the first one, $75,000, being approximately ten per cent. of the net estate, and the second, $127,000, being more than twenty per cent. of the then net estate — and the appellants so concede.)
It is contended by appellants that the statutory provision that gifts under the circumstances mentioned shall be deemed to have been made in contemplation of death, "in *Page 286 
the absence of proof to the contrary," does not place the burden of proof upon the decedent's estate to show that the gift was not made in contemplation of death, but is simply a rule of practice, an arbitrary legal presumption functioning only if there be no evidence at all tending to disprove that the gift was made in contemplation of death; that if there be any evidence tending to prove that the gift was not so made the burden of proof is upon the state to show that the gift was made in contemplation of death, and that on such an issue this arbitrary rule of law cannot be considered in determining the balancing of the evidence.
Assuming, without deciding, that appellants are correct in this contention, I do not see that it is of any benefit to appellants upon this appeal, because there is nothing in the record to show that the comptroller made any ruling to the contrary or acted upon any contrary principle, nor is there any admission to that effect in the brief for the state. Such admission cannot be spelled out of the mere fact that the attorney-general's argument contradicts the correctness of appellants' legal contention above mentioned.
It is argued by appellants that since the evidence shows that decedent had made a gift of $25,000 each to the two daughters, about May 1st, 1920, and the comptroller did not assess tax in respect thereto, it is a necessary conclusion that he made the distinction solely by reason of the fact that the May gift was more than two years prior to the death, and that this shows, therefore, that in assessing tax on the subsequent gifts, he did so upon the theory that the statute imposed the burden of proof upon the estate.
This conclusion is not sound. The evidence is by no means so strong in regard to the May, 1920, gift as it is in regard to the later gifts. For one thing there are the facts and circumstances in connection with the transfer of the houses, hereinafter mentioned, which do not appear in connection with, or affect, the gift in May, 1920. For another, it appears that the gift in "the early part of December, 1920," was contemporaneous with the making of a codicil to decedent's will, on December 9th, 1920. Again, *Page 287 
the daughters swear that "during the whole of the year 1920" decedent was advised by his physician that "there was no reason to anticipate that he would not live for many years." It would seem highly probable that this statement was made by the physician in response to inquiry by decedent, and that such inquiry showed some solicitude by decedent, and the comptroller might reasonably have thought it a fair inference that this occurred prior to December, 1920, but have thought that, the burden of proof being, on the state, it was not a fair inference that it happened prior to May, 1920.
It is not the function of this court to weigh the evidence or substitute its judgment for that of the comptroller, but only to determine if error has been committed. In re Pierce, 89 N.J. Eq. 171;In re Hall, 94 N.J. Eq. 398. Hence, if there be any evidence — or, at least, any substantial evidence — in support of the comptroller's finding, this court is not at liberty to review and weigh the entire evidence and say that in its judgment the evidence seems to preponderate in favor of the decedent's estate on the issue in question and that the assessment should therefore be set aside.
This, indeed, if I correctly apprehend appellants' argument, they do not controvert. Their position is, apparently, that there is no substantial evidence in the case upon which a finding that the gifts were made in contemplation of death can legally be made. An examination of the evidence shows that this position is untenable. The circumstances shown, while not making out quite so strong a case as in the Bottomley Case, are nevertheless to a considerable extent similar to those appearing in In reBottomley, 92 N.J. Eq. 202. The gifts were made to his two daughters, who had previously lived with him, at least, alternately, and continued so to do, in the very houses transferred, which were the only residences owned by decedent; decedent was seventy-two years old and knew that he had heart disease, which, in fact, caused his death a year and five months after the first of the two gifts in question; contemporaneously with the first of these two gifts, he had made a codicil to his will; and *Page 288 
he stated, as one of the reasons which influenced him to make the gifts, "the fact that by turning over these properties during his lifetime, no possible question could arise after his death, as to the right of the daughters to the possession and enjoyment of these properties, even if, what seemed an unlikely event, a successful contest was made over his will." (His will gave all his estate to the two daughters, except a small bequest of about $15,000 to his son.) Decedent continued to pay the household accounts after the transfer.
This is, of course, not all the evidence, but is enough to show that sufficient basis existed from which a reasonable man might fairly, even though not necessarily, draw the inference of fact that he made the gifts in contemplation of death. The fact that, in connection with his advanced age, he had heart disease and knew it, is not by any means eliminated as a factor in the case by the fact that his doctor had told him, in 1920, that there was no reason for him to anticipate death in the near future, nor to anticipate that he would not live for many years to come. It is a matter of common knowledge that persons who know that they have heart disease are commonly apprehensive as to death ensuing therefrom, and the fact that decedent made inquiry in that behalf shows that he had at least some solicitude in regard thereto.
If it be contended on behalf of appellants — in connection with their contention that the burden of proof is upon the state to show that the gift was made in contemplation of death — that it is within the power and duty of this court to consider and determine whether or not the comptroller's decision in that behalf is against the clear weight of the evidence; and, that in the present case, the comptroller's decision was against the clear weight of the evidence upon that point, the answer is that, assuming the correctness of the first two of these contentions, in my opinion the determination of the comptroller was not against the clear weight of the evidence. This, indeed, sufficiently appears, perhaps, from what I have hereinbefore stated.
 No error appearing, the tax will be affirmed. *Page 289